# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANICE S. HAAGENSEN,<br>　　　　　　　　Plaintiff,<br>　　v.<br><br>PENNSYLVANIA STATE POLICE;<br>CHRISTIAN F. WINTER,<br>CLYDE JONES, and<br>SCOTT TODD, individually and in official capacity<br>as State Police Officers;<br>PENNSYLVANIA GAME COMMISSION;<br>JOHN DOE, individually and in official capacity as<br>State Game Warden;<br>and the following individual hunters as complaining<br>witnesses:<br>NATHANIEL AIKENS,<br>GARY FERRIGNO,<br>CATHY FERRIGNO,<br>RALPH JOY,<br>MICHAEL MCBRIDE,<br>JAY MCBRIDE,<br>LESLIE MCBRIDE,<br>BEN SHERRY,<br>JORDAN SNYDER,<br>SHANE SPARKS, and<br>GEORGE STEVENISH,<br>　　　　　　　　Defendants. | CIVIL ACTION NO.<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br><br>Electronic Filing<br>May 27, 2008 |

## COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff challenges the constitutionality of the Hunter Harassment Act, 34 Pa.C.S.A. §

2302. The hunter harassment statute in question is an overbroad and vague state law that imposes

criminal penalties on the practice of First Amendment rights by making it a crime to "impede or

otherwise harass" another person who is engaged in hunting. See Pa.C.S. §§ 2302(A.1)(2) and

(7). Section (A.1)(2) makes it a crime to "harass" a hunter, and Section (A.1)(7) makes it a crime

to enter on public or private lands with the intent to violate this section, i.e. to "harass" persons

who are hunters.

Under the Hunter Harassment Act, any speech which state-licensed hunters might consider to be "harassing," based on its content, is potentially criminal if spoken in their immediate presence. The effect of the hunter harassment statute is to restrict adults from communicating and receiving expression that is clearly protected by the Constitution. The hunter harassment statute is unconstitutional under the First and Fourteenth Amendments to the United States Constitution, both on its face and as applied to plaintiff. Plaintiff alleges that the Pennsylvania Game Commission has a custom, pattern, practice or policy of authorizing its officers (including State Police officers who share concurrent jurisdiction with Game Wardens) to falsely arrest and maliciously prosecute Pennsylvania landowners and other members of the public under Pennsylvania's hunter harassment statute as based solely on their use of speech protected by the First Amendment. Pursuant to this custom, policy or practice, State Trooper Christian F. Winter unlawfully and falsely arrested (through issuance of a citation) and maliciously prosecuted the plaintiff, pursuant to the hunter harassment statute, based solely on the plaintiff's complaint made directly to hunters and to the police concerning trespass and other outrageous, dangerous and reckless conduct engaged in by hunters and taking place in her immediate vicinity. State Trooper Todd Scott unlawfully and falsely arrested (through issuance of a citation) and maliciously prosecuted the plaintiff, pursuant to the criminal harassment statute, based solely on the plaintiff's complaint made to hunters and to the police concerning trespass and other reckless, dangerous conduct engaged in by said hunters. Trooper Clyde Jones unlawfully and falsely arrested (through issuance of a citation) and maliciously prosecuted the plaintiff, pursuant to the civil harassment statute, as providing relevant definitions of meaning to be inserted into the hunter harassment statute, based solely on the plaintiff's complaint made to hunters and to the police concerning criminal, reckless and outrageous conduct engaged in by

2

hunters on a public road. Plaintiff was never involved in criminal activity and there was no probable cause to arrest her for the exercise of her First Amendment rights.

Plaintiff also challenges as unconstitutional the application to her of the Commonwealth of Pennsylvania's civil harassment statute, 18 Pa.C.S. § 2709, in that such application violated her rights to free speech, and equal protection under the United States Constitution and the relevant provisions of the Pennsylvania Constitution.

1. This is an action for declaratory, injunctive and monetary relief brought pursuant to 42 U.S.C. § 1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution, together with Article I, §§ 1, 7 and 27 of the Pennsylvania Constitution, seeking redress for plaintiff herein in being falsely arrested, seized and maliciously prosecuted pursuant to the practice by plaintiff of her First Amendment right of protected speech.

## JURISDICTION AND VENUE

2. This case arises under the United States Constitution and the laws of the United States and presents a federal question within this Court's jurisdiction under Article III of the federal Constitution and 28 U.S.C. § 1331. This Court has original jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1983. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law.

3. The Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

4. The Court has the authority to award costs and attorney fees under 42 U.S.C. § 1988.

5. Venue is proper in this district under 28 U.S.C. § 1391(c).

THE STATUTORY LANGUAGE AT ISSUE

6.   This is an action for declaratory and permanent injunctive relief to enjoin the enforcement of 34 Pa.C.S. § 2302 of the Pennsylvania Game and Wildlife Code as presently enacted and to declare the statute unconstitutional on its face. This action also seeks a declaration that the statute is unconstitutional as applied to Plaintiff Haagensen. The statute in question was signed into law on July 8, 1986, P.L. 442, No. 93, § 1 eff. July 1, 1987, Amended 1992, May 28, P.L. 262, No. 45, § 1, eff. July 1, 199 to allow any police officer or authorized individual to criminally prosecute a citizen for speech uttered in the presence of state-licensed hunters. The statute is completely devoid of any substantive standards at all. The absence of any standards for determining when speech and conduct will be permitted and when they will be prohibited renders the statute a classic standardless law in violation of the Fourteenth Amendment of the United States Constitution.

7.   The statute contains no limitations that exclude from its reach individuals who are legally asserting their First Amendment rights of free speech and free association. It permits the defendants (and others acting in concert with them or pursuant to their authority), the police and other authorized persons to criminally prosecute citizens for exercising their constitutional right to free speech because the defendants disagree with the content of the speech or the viewpoint of the speaker. The statute thus creates an unacceptable risk of application to a substantial amount of protected conduct and is unconstitutionally overbroad.

8.   The statute also limits the public spaces that the public may access without fear of criminal prosecution. The statute thus improperly infringes on Plaintiff's and the public's fundamental right to move from place to place, to walk or ride freely on a public road and to stand under open sky as protected by substantive due process guarantees.

4

9. The statute in question, 34 Pa.C.S. § 2302, violates the due process clause and equal protection clause of the Pennsylvania and United States Constitution, and Article I, §§ 1 and 27 of the Pennsylvania Constitution, in the following respects:

    a. The statute in question is void for vagueness, in that it fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited;

    b. The statute fails to give reasonable notice of the conduct which it proscribes to a person charged with violating it;

    c. The statute is so indefinite that it encourages arbitrary and erratic arrests and as such is void for vagueness;

    d. The statute fails to create a rational and reasonable relationship to the achievement of a legitimate state goal;

    e. The statute prohibits protected speech and other constitutionally protected conduct in violation of the First and Fourteenth Amendment to the U.S. Constitution, and Article I, § 7 of the Pennsylvania Constitution;

    f. By failing to define the term "harasses," and other terms, the statute attempts to regulate the conduct of speech;

    g. The statute attempts to regulate speech by persons who may be objecting to certain hunting activities and thus treats a particular class of persons who are or may be engaging in protected First Amendment and Article 1, § 7 activity differently than others without any compelling state interest;

    h.  If the statute is not unconstitutional on its face, it is unconstitutional as it was applied to plaintiff because it attempted to punish her for engaging in constitutionally protected speech;

    i.  The statute violates Article 1, § 1 of the Pennsylvania Constitution in that the statute on its face or as applied to Plaintiff violates Plaintiff's constitutional right to enjoy and defend life and property; and,

    j.  The statute violates Article 1, § 27 of the Pennsylvania Constitution in that on its face or as applied to Plaintiff, it violates Plaintiff's constitutional right to the natural, scenic and aesthetic values of the environment.

10.    The Plaintiff requests that this Court declare the referred to provisions of the statute unconstitutional on their face and as applied to Plaintiff, because all state charges brought against the plaintiff pursuant to the statute in question were dismissed in their entirety by a duly constituted state court with jurisdiction of Plaintiff's cause.

11.    The statute in question, 34 Pa.C.S § 2302 of the Pennsylvania Game and Wildlife Code, was used by the Commonwealth of Pennsylvania to deprive a Pennsylvania resident of her fundamental constitutional rights.

12.    This statute allows any state police officer or authorized person to ban an individual from public property based on nothing more than the officer's or person's prejudices and predilections. Under the statute, a person need not engage in any misconduct to be banned from public property. It is enough that the police officer or authorized person disagrees with the content or message of the individual's speech.

## PARTIES

13.    Plaintiff Janice Haagensen is a citizen of the United States and was at all times relevant to this action a resident of and domiciled in the State of Pennsylvania.

14.    Defendant Pennsylvania State Police is a police agency organized under the laws of the Commonwealth of Pennsylvania, and has a responsibility to operate and train employees according to the laws of the United States and the Commonwealth of Pennsylvania, including the U.S. Constitution and the Pennsylvania Constitution.

15.    Defendant Pennsylvania Game Commission is a state agency organized under the laws of the Commonwealth of Pennsylvania, and has a responsibility to operate and train employees according to the laws of the United States and the Commonwealth of Pennsylvania, including the U.S. Constitution and the Pennsylvania Constitution.

16.    Defendant Michael McBride is a police officer employed by North Beaver Township, Lawrence County, Pennsylvania, and also employed by the Ellwood City Police Department, Lawrence County, Pennsylvania. He is a hunter and one of the complaining witnesses in concert with the Commonwealth Defendants who brought charges against Plaintiff under the Hunter Harassment Act.

17.    Defendant Nathaniel Aikens is a police officer employed by the City of New Castle Police Department, Lawrence County, Pennsylvania. He is a hunter and one of the complaining witnesses in concert with the Commonwealth Defendants who brought charges against Plaintiff under the Hunter Harassment Act.

18.    Defendant Christian F. Winter is a State Police officer employed by the Commonwealth of Pennsylvania.

19.   Defendant Clyde Jones is a State Police officer employed by the Commonwealth of Pennsylvania.

20.   Defendant Todd Scott is a State Police officer employed by the Commonwealth of Pennsylvania.

21.   Game Warden John Doe, whose full identity at this time is not known to the plaintiff, is employed by the Pennsylvania Game Commission.

22.   Defendant Leslie McBride is an adult resident of Enon Valley, Pennsylvania. He is a hunter and one of the complaining witnesses in concert with the Commonwealth Defendants who brought charges against Plaintiff under the Hunter Harassment Act.

23.   Defendant Gary Ferrigno is an adult resident of Koppel, Pennsylvania. He is a hunter and one of the complaining witnesses in concert with the Commonwealth Defendants who brought charges against Plaintiff under the Crimes Code, Civil Harassment Section, 18 C.S.A. § 2709(A)(2).

24.   Defendant Cathy Ferrigno is an adult resident of the Commonwealth of Pennsylvania. She is a hunter and one of the complaining witnesses in concert with the Commonwealth Defendants who brought charges against Plaintiff under the Crimes Code, Civil Harassment Section, 18 C.S.A. § 2709(A)(2).

25.   Defendant George Anthony Stevenish is an adult resident of Edinburg, Pennsylvania. He is a hunter and one of the complaining witnesses in concert with the Commonwealth Defendants who brought charges against Plaintiff under the Hunter Harassment Act.

26.   Defendant Ben Sherry is an adult resident of the Commonwealth of Pennsylvania. He is a hunter and one of the complaining witnesses in concert with the Commonwealth Defendants who brought charges against Plaintiff under the Hunter Harassment Act.

27. Defendant Jordan Snyder is an adult resident of the Commonwealth of Pennsylvania. He is a hunter and one of the complaining witnesses in concert with the Commonwealth Defendants who brought charges against Plaintiff under the Hunter Harassment Act.

28. Defendant Ralph Joy is an adult resident of the Commonwealth of Pennsylvania. He is a hunter and one of the complaining witnesses in concert with the Commonwealth Defendants who brought charges against Plaintiff under the Hunter Harassment Act.

29. Defendant Shane Sparks is an adult resident of the Commonwealth of Pennsylvania. He is a hunter and one of the complaining witnesses in concert with the Commonwealth Defendants who brought charges against Plaintiff under the Hunter Harassment Act.

30. Defendant Jay McBride is an adult resident of the Commonwealth of Pennsylvania. He is a hunter and one of the complaining witnesses in concert with the Commonwealth Defendants who brought charges against Plaintiff under the Hunter Harassment Act.

## FACTS

31. Plaintiff Janice Haagensen at all times relevant to this action was a resident of North Beaver Township in Lawrence County, Pennsylvania. She resides at 349 New Road, Enon Valley, Pennsylvania, where she lives on a sixty-acre property in a very rural area.

32. Plaintiff's parents, Mr. D.E. and Mrs. Myrtle Haagensen, now deceased, resided on said property since 1968. Soon after they moved in, they were subjected to vicious and long-term criminal harassment by local hunters in retaliation for their refusal to allow killing, hunting or trapping of animals on their property.

33. The Haagensens sustained serious property damage over the years. Their barn and farmhouse were burned to the ground, their fences were cut, their gates were taken out of the ground and stolen, their "No Trespassing" signs were torn apart, and live trees were killed by

illegal tree stands and the insertion of iron spikes. Plaintiff's father was sprayed with buckshot as he stood on his own driveway; live rifle rounds went through the Haagensens' front yard before those rifle slugs were buried in all three walls of their next-door neighbor's home. No perpetrator of these crimes was ever identified or arrested by the local or state police, or by game wardens in the employ of the Pennsylvania Game Commission.

34.    The Haagensens were routinely threatened every hunting season with bodily harm, arson, and assaults on their pets, horses and dogs by trespassing hunters who were caught invading the property with lethal weapons, such as high-powered rifles, archery paraphernalia, and steel traps. Deer and fawn were shot and killed out of season, and left to rot in the fields; many deer were wounded and left to die slowly of blood loss and mutilations. Hunters when confronted on Haagensen land refused to identify themselves, and refused to reveal the numbers on their hunting licenses which they were required under state law to make available for inspection by landowners.

35.    The Haagensens for three decades had no cooperation from law enforcement or from the Pennsylvania Game Commission when the Haagensens asked for protection from these home invaders and reported these crimes to the police, and to game wardens, requesting on numerous occasions over the years that the perpetrators be identified by the authorities and prosecuted to the full extent of the law.

36.    Plaintiff was initially charged by the Pennsylvania State Police with eight separate criminal offenses in alleged violation of hunter harassment and civil harassment state laws; she was also charged by the State Police with two additional indictable offenses; i.e., two counts of making false reports to law enforcement authorities. These actions of Defendant Troopers Winter, Jones and Todd were willful, wanton, malicious, intentional, reckless, outrageous,

deliberate and/or so egregious as to shock the conscience. All of these Defendants used their status as police officers to employ the use of retaliation and malicious prosecution, or to achieve ends not reasonably related to their police duties.

37.   Plaintiff was acquitted of one of the civil harassment charges (brought by Wallace Reed) by the District Magistrate. She was acquitted of a second civil harassment charge (brought by Edward Abersold) after a full-fledged criminal trial devoted only to this matter in the Court of Common Pleas. She was also acquitted of a harassment charge brought by Defendant Gary Ferrigno in the Court of Common Pleas, after trial on multiple counts. The baseless felony charges were withdrawn by the District Attorney of Lawrence County. Plaintiff was convicted of the five remaining charges in the Court of Common Pleas, but ultimately cleared of any criminal wrongdoing whatsoever by the Commonwealth Court of Pennsylvania.

38.   On December 4, 2001, Plaintiff drove into the driveway at the top of her hayfield to be sure that no hunters were parking there and sneaking into the woods. She saw two of her neighbors (Wallace Reed and Edward Abersold) in a field across from the woods, and told them that she was tired of their dogs running loose on her property and chasing deer, and wanted them kept at home. She also told them not to throw glass beer bottles into her hayfield, and to keep their friends who were hunters off her property.

39.   Plaintiff was subsequently charged by the state police with civil harassment because she allegedly told Wallace Reed not to hunt on his own property, and because she allegedly "harassed" Edward Abersold by physically beating him with a beer bottle. Plaintiff was acquitted of the first charge after her hearing in magisterial district court, and was acquitted after a criminal trial as to charges brought by Abersold was held in the Court of Common Pleas.

11

40.    On December 1, 2001, Plaintiff and her elderly mother were driving down a local road when they saw hunters trespassing on their property. Plaintiff parked her truck and walked through a field toward the place where the hunters were standing, told the two hunters that she confronted that they were trespassing on her property, that she did not permit hunting, and informed them that they should leave immediately, and stay off her property in the future.

41.    Then, Defendant Michael McBride, a township police officer and the son of a nearby farmer whose land bordered on the Haagensen woods and fields, approached the Plaintiff through a wooded area, and walked to where she and the two hunters were standing. McBride, apparently was not hunting because he was not wearing blaze orange, was not carrying a gun, and did not display on his person a state hunting license. He tried to explain that the hunters were on his father's land and not on Haagensen property.

42.    The two hunters—Defendant Nathaniel Aikens, a City of New Castle police officer, who was wearing blaze orange and his son—were both armed when they were confronted by the Plaintiff, and were apparently in possession of hunting licenses.

43.    Aikens stated that he had positioned himself where Michael McBride had told him to stand in the woods, and admitted that he didn't know personally where the boundaries were, but had believed that McBride knew what he was talking about, and knew where the boundaries lay in the woods and brushy fields.

44.    Plaintiff repeated her statement that all of the hunters should get off her property; she then walked back across the field to her truck. When she got there, a State Police officer was waiting for her. She complained about the presence of trespassing hunters on her mother's farm, and the trooper represented to her that he would question McBride and Aikens as to what they had been doing in the woods belonging to the Haagensens.

12

45.    Defendant Michael McBride represented as a complaining witness acting in concert with State Trooper Christian Winter that the plaintiff was guilty of "verbal harassment" directed at him "while he was hunting." Defendant McBride knew this charge to be false at the time it was made (see ¶ 41 above). Defendant Aikens also knew at the time when the complaint was framed that the plaintiff was innocent of any physical conduct "impeding" a legal hunt, and he acted in concert with the State Police to falsely charge the plaintiff with a crime.

46.    Plaintiff was later charged by citation with hunter harassment of both McBride and Aikens; the state trooper involved never filed the plaintiff's complaint against the two police officers whom she had caught trespassing on her ground.

47.    Michael McBride testified under oath that he was not carrying a gun, and was not "hunting" when he walked up to plaintiff in the woods. The trial court judge, de novo in the Court of Common Pleas, found the plaintiff guilty of the criminal offense of hunter harassment of Michael McBride, pursuant to Title 34, § 2302 (A.1)(2) and (7). All criminal charges were ultimately dismissed on appeal to the Commonwealth Court of Pennsylvania, on grounds that the Plaintiff was not guilty of any criminal conduct as charged by the Commonwealth.

48.    Plaintiff was also charged by the State Police with two felony indictments of making false reports to law enforcement authorities, pursuant to 18 Pa.C.S § 4906, in connection with an incident which took place on that same day. Plaintiff saw a group of hunters going into the woods on the farm where she and her mother resided, and called the state police to arrest them and get them out of the woods. The state trooper never appeared until much later that morning when she and her mother were confronting the next invading group of hunters (McBride and Aikens) on their other property. The District Attorney of Lawrence County later moved to withdraw these baseless felony indictments as originally raised and framed by his office and the

13

State Police against the Plaintiff. The State Police filed these charges based on information received from Michael McBride, who knew these felony charges to be false when they were made.

49.   On the afternoon of December 8, 2001, Plaintiff and her mother were driving down Mt. Air Road when they saw in front of them a large group of hunters being dropped off a truck and walking into the woods toward the boundaries of the Haagensen property.

50.   Plaintiff parked her truck on a neighbor's property and walked across that neighbor's fields, having obtained specific permission to do so, to reach her own ground and stop the group of hunters from driving animals out of the Haagensen woods and fields.

51.   Plaintiff sighted the large group of men attempting to sweep through her woods and drive out the deer, screamed at them not to shoot toward her and to get off her property, and walked back to the road where the truck was parked, after the hunters ran out of the woods in front of her.

52.   Plaintiff had shouted as loudly as possible for them to leave her alone, but was still afraid of being shot by them, even when she approached the road.

53.   Plaintiff was met by a State Police officer and a Game Warden, in addition to a gang of hunters on the road; all of the hunters were armed with high-powered rifles. The Game Warden did not identify himself to the Plaintiff; he knew or should have known that he should disarm the hunters who were standing on the road, and make them unload their weapons. He knew or should have known that an unrostered hunt of big game or deer was illegal. He knew or should have known that trespass on private property and intimidation of a landowner was illegal. The hunters involved stood on the road facing her with loaded weapons raised in their arms. The trooper never checked their weapons when Plaintiff was in their presence; he did not make the

14

hunters unload their weapons when they were in the presence of Plaintiff, as they stood by the side of the road.

54.    Plaintiff knew that she was in the presence of a gang of hostile men, all of whom were armed. Plaintiff was unarmed; she was intimidated by the presence of loaded guns in the hunters' possession, as they stood on a public road, and feared for her safety and the safety of her elderly mother.

55.    The trooper and the game warden did nothing to control the hostility of the gang of hunters. The trooper and game warden never asked if the hunters were legally rostered, and never demanded identification from the men involved in the sweep. The police did nothing except to ask the plaintiff if she had been trespassing. The plaintiff informed them that she had explicit permission from her neighbor to cross his property, and was not guilty of trespassing on her own property. Plaintiff attempted to file a complaint with the police officer and the game warden; she requested that any hunter who went on her ground be arrested for defiant and criminal trespass.

56.    Plaintiff was subsequently charged by a State Trooper and by six participants in the illegal sweep with hunter harassment, pursuant to 34 Pa.C.S 2302(A)(2). All charges brought against the Plaintiff were dismissed on appeal by the Commonwealth Court of Pennsylvania, on grounds that the plaintiff was innocent of any criminal conduct. No charges were ever brought against the hunters who participated in the deer drive without a legal roster, who trespassed on the Haagensen property, and who omitted crucial evidence of trespass from the report made by them to the State Police and a game warden, as complaining witnesses.

57.    Complaining witness Leslie McBride admitted on the witness stand in the Court of Common Pleas that at least 8 to 10 hunters were attempting to drive the deer out of the woods;

he testified that none of the hunters in the group were rostered; he also admitted under oath that he saw other hunters trespassing on the Haagensen property, but never informed the police, at the time when he complained to them about the plaintiff's "harassment." He admitted under oath that he knew that trespassing hunters had in fact invaded the Haagensen property during this episode. McBride was never charged with providing false information to law enforcement officers

58.    Individual Defendants Leslie McBride, Sherry, Snyder, Joy, Sparks and Jay McBride all knew at the time they framed their complaint against the plaintiff that they had conducted an illegal and unrostered hunt pursuant to Game Code regulations, and knew at the time that they made the complaint that hunters acting in concert with them were guilty of trespass on the Haagensen property. All individual defendants acted in concert with State Troopers and a game warden in the employ of the Pennsylvania Game Commission to frame false charges against the Plaintiff. They falsely swore that the plaintiff "harassed" them while they were engaged in a "lawful" hunt.

59.    On December 8, 2001, Plaintiff was running an errand in her truck when she saw a flash of orange at the top of the hillside next to Moravia Road, and knew that a hunter was heading straight into the woods on her home property.

60.    Plaintiff walked toward him by parking on her neighbor's driveway, and went across his ground (which she had explicit permission to do) to approach the woods. She began to scream as loudly as possible "Don't shoot toward me," and told the hunter that he was on private property. Immediately she heard shots being fired in close proximity to where she stood; she then went back to her truck. She was never close enough to the trespassing hunter to identify him.

61.   Plaintiff reported this incident to the State Police, and requested that they identify and arrest any trespassing hunters on her property. The trooper to whom she made her complaint said he would do this. Subsequent to this incident, the Plaintiff was charged with yet another count of hunter harassment pursuant to Title 34 of the Game Code, in that she allegedly "harassed" the trespassing hunter by demanding that he get off her property where the Commonwealth believed that he was "lawfully" hunting deer. No hunter involved in this incident was ever charged with a criminal offense. All criminal charges related to this incident which were brought against the Plaintiff by the State Police were ultimately dismissed on appeal by the Commonwealth Court of Pennsylvania

62.   Defendant Stevenish knew at the time when he acted in concert with the State Police to frame false charges against the plaintiff that the plaintiff had the right to speak freely regarding trespass and dangerous shooting on her own property. He knew at the time that he made his complaint that the plaintiff was innocent of harassing him when he was in the process of conducting a "legal" hunt, and was aware at the time when he made his complaint that he had been invading private property,

63.   On December 3, 2001, the Plaintiff and her mother were exiting their own driveway when they saw that hunters were in extremely close proximity to the public road which the Haagensens were preparing to travel. Plaintiff went up the hill on New Road in her truck, past the hunter closest to the road, went to the top of the hill to see if any other hunters were in the field, and came down the road past the first hunter. Plaintiff could see that a woman in orange with a high powered rifle was resting the gun on the top of a large hay bale only a few feet away from the road. The hunter was pointing her weapon straight at the road. Plaintiff slowly drove

past, and shouted that the woman could not hunt from that position, told her to stop, and

informed her that the police were being called to make an arrest.

     64.   The woman then stepped into the road, broke open her rifle, and started to empty the

rifle shells out of the gun. As she was doing this, a second hunter came out of the brush and into

the road. He blocked the Haagensens by standing in the middle of the road with a rifle in his

arms; he then approached the truck and screamed that he would kill them for interfering with his

hunt on the road.

     65.   Plaintiff called for help from the State Police. State Trooper Clyde Jones took at least

thirty minutes or more to arrive. He refused to take a statement from the Plaintiff, or from her

severely handicapped mother, who was in extreme distress by the time the police finally got to

the scene. Plaintiff wanted the hunters arrested for threatening passers-by on a public road. The

trooper screamed at the plaintiff and told the plaintiff to shut up, said that the hunters were not

doing anything wrong, and said it was o.k. for them to continue their hunt on the road with their

high-powered rifles. The officer refused to arrest the individual hunter who made the threat to

kill the Haagensens. The officer refused to provide the plaintiff and her mother with an incident

report form, or to file their complaint regarding malicious destruction of their property (fence

cutting) which had taken place that morning. Plaintiff and her mother knew that it was unsafe for

them to drive on the local roads because the police had given hunters the right to discharge lethal

weapons thereon. State Trooper Jones did absolutely nothing to protect drivers exercising their

rights to travel from the lawbreakers making the road too dangerous for licensed drivers to use it

for its intended purpose.

66.   Plaintiff and her mother knew that the road where the hunters had taken up their positions was traveled by the local school bus, and were made further distraught by this knowledge.

67.   Complaining witness Cathy Ferrigno testified under oath in the Court of Common Pleas that she was standing in possession of a loaded gun, no more than ten feet away from a public road, with the intention of firing said loaded gun and "hunting" from that position. She admitted under oath that her rifle was loaded. She also testified that after finally moving away from this position, she and the second hunter who was with her, Gary Ferrigno, took up a second hunt, after being encouraged by the police to do so, no more than 25 feet away from another local road.

68.   Defendant Gary Ferrigno, who was with Cathy Ferrigno during this incident, testified that he knew the road where they stood was open to public travel. He stated that his wife was standing with a loaded rifle near the Haagensen truck on the public road, waiting to shoot from that position. He stated under oath that his favorite place to hunt was "right by the road." When questioned on redirect by the Asst. District Attorney, Gary Ferrigno testified that his wife was standing close to the street so that she could rest her gun on a bale of hay beside the road, and shoot to kill.

69.   Plaintiff was subsequently charged with two separate counts of civil harassment of the Ferrignos, pursuant to Chapter 18, § 2709 (A)(2) of the Crimes Code; Plaintiff was acquitted of this specific offense brought by Gary Ferrigno in the Court of Common Pleas, but she convicted of the same charge as raised by complaining witness Cathy Ferrigno. Plaintiff was ultimately acquitted of the criminal charge of civilly harassing Cathy Ferrigno by the Commonwealth Court of Pennsylvania, on appeal.

70.   The State Trooper who was involved in this episode used the civil harassment statute to intimidate the witnesses to a serious criminal incident. Plaintiff had reason to believe that if she called the police to investigate any subsequent criminal event to which she was a witness, the police would retaliate against her in some fashion because she refused to let them or their friends road-hunt or trespass on private property.

71.   Plaintiff spent five years in court getting rid of the slanderous and false charges brought against her by the State Police, pursuant to elements of the Pennsylvania Crimes Code and the Pennsylvania Game Code. She was subjected to intense emotional distress when the charges against her, including felony charges for indictable offenses, were published in a local newspaper. Retraction of these charges was never published, and the Office of the District Attorney never apologized in any public venue for its prosecution of a citizen innocent of any crime. Plaintiff feared for her life because the police refused to enforce state law preventing any person from firing a weapon in close proximity to a public road, or across it, and she became afraid to drive on the only road that permitted her and her mother to exit from their home. Both she and her mother feared for their lives when they traveled on the public road. Both she and her mother were subjected to intense emotional distress because they knew that many other persons as well as local children were put at risk by the criminal, outrageous and reckless conduct of hunters in possession of loaded weapons, who acted with the intent to fire those weapons by the side of a public road, traveled daily by a school bus filled with the children and grandchildren of her friends and neighbors.

72.   Plaintiff was convicted of six different criminal offenses in Magisterial District Court, and was humiliated and subjected to emotional distress when she was fingerprinted by the State Police after the conclusion of the hearing. The six convictions were overturned on appeal.

73. When the Assistant District Attorney and the State Police were requested to remove Plaintiff's fingerprints from the NCIS data base, they refused to do so. To the best of her knowledge, Plaintiff's fingerprints are still in the data base, though she was found innocent of any crime by a state appellate court vested with jurisdiction of her cause. The District Attorney and his successors-in-office recklessly, deliberately and maliciously refused to remove the plaintiff's fingerprints from the information system where it is still, to the best of Plaintiff's knowledge, illegally stored.

74. Plaintiff alleges that the Commonwealth of Pennsylvania has manifested a pattern of authorizing its State Troopers to arrest people illegally under Pennsylvania's hunter harassment and civil harassment statutes based on their use of speech protected by the First Amendment. Pursuant to this policy, Troopers Winter, Jones and Todd unlawfully and falsely arrested and maliciously prosecuted Plaintiff based solely on Plaintiff's use of speech criticizing the behavior of hunters, and her speech requesting that the police file charges against them to restrain their reckless, outrageous and life-threatening conduct.

75. Plaintiff alleges that the Pennsylvania State Police and Game Commission have a custom, pattern, practice or policy of authorizing their employees to encourage hunters to be complaining witnesses complicit in an effort to arrest people illegally under Pennsylvania's hunter harassment statute, and its civil harassment statute, based on citizens' use of speech protected by the First Amendment. Pursuant to this custom, policy or practice, the individual Defendants unlawfully and falsely acted as complaining witnesses complicit in a successful effort made by individual Defendants and the Commonwealth Defendants State Police and Game Warden to arrest the plaintiff based solely on the content of her protected speech to trespassing hunters and on the basis of her legitimate complaints as made to law enforcement officers.

76.   At all relevant times, the Commonwealth and individual Defendants acted under color of state law, and are not entitled to qualified immunity. At all relevant times, Defendant State Police officers Winter, Jones and Todd acted within the scope of employment by the Commonwealth of Pennsylvania.

77.   All police defendants had an obligation to protect the public, including the Plaintiff.

78.   Plaintiff did not commit any criminal offense.

79.   The State Troopers who falsely arrested and maliciously prosecuted the Plaintiff had no probable cause for Plaintiff's arrest, and no legal cause to seize her for trial.

80.   As a direct and proximate result of Defendants' actions, Plaintiff suffered the following injuries and damages:

   a.   Violation of her rights under the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, to be free from criminal prosecution, or to be retaliated against in any way for engaging in constitutionally-protected speech.

   b.   Violation of her rights under the Fourth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, to be free from an unreasonable search and seizure of her person;

   c.   Violation of her rights under the Fourth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, to be free from malicious prosecution;

   d.   Loss of physical liberty; and

   e.   Emotional trauma, humiliation, and distress.

81.    To date, no meaningful investigation or incident review of its officers' misconduct has been initiated by the chief law enforcement officer of the Pennsylvania State Police, or the Executive Director of the Pennsylvania Game Commission, nor has any officer involved been disciplined or subjected to retraining.

82.    The arrests of the Plaintiff by the defendant officers, on information and belief as to complaints made by other police officers, were completely without legal basis and comprised false arrests. What followed constituted false imprisonments, and malicious prosecutions, which, with the false arrests, represent violations of plaintiff's protected rights under the First, Fourth and Fourteenth Amendments to the U.S. Constitution. The same conduct also violates Article 1, §§ 1 and 7, and Article 1, § 27 of the Pennsylvania Constitution.

83.    The conduct described damaged the plaintiff and was a deliberate and malicious effort by the police defendants and the complaining witnesses to harm the plaintiff, and was wholly unrelated to any legitimate state objective.

84.    Plaintiff was also damaged by the deliberate indifference and gross negligence of all police defendants as to their duties under state law.

85.    Because of the defendants' actions, Plaintiff has undergone and continues to suffer extreme embarrassment, humiliation and mental anguish, including the embarrassment and humiliation of being prosecuted in a public forum when she has committed no crime.

86.    Plaintiff suffered financial losses because she had to immediately pay significant fines and costs to Lawrence County, and she was forced to engage criminal attorneys to represent her in the Court of Common Pleas and on appeal in the Commonwealth Court of Pennsylvania.

87.    The actions of defendants described herein were done in bad faith, maliciously, and with a deliberate indifference to the plaintiff's protected rights, and with a callous and reckless

23

disregard for the same. Awards of punitive damages against the individual defendants are thus warranted.

88.   The acts and conduct of the individual defendants also represent liability under state tort law, constituting negligence, gross negligence and defamations per se.

89.   The Commonwealth of Pennsylvania, by virtue of custom, pattern, practice, training and/or policy, authorizes its State Troopers to act in an unconstitutional fashion by enforcing 34 Pa.C.S §§ 2302 (A.1)(2) and (7) against people who verbally complain to hunters concerning the hunters' illegal conduct, and who verbally report crimes committed by hunters to the police, all of which is constitutionally-protected speech

90.   The Commonwealth of Pennsylvania State Police policymakers and officials are deliberately indifferent to the misapplication of the hunter harassment statute and the civil harassment statute to arrest and prosecute people engaged in constitutionally protected expressive activity.

CAUSES OF ACTION

INTRODUCTION

91.   Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations set forth in Paragraphs 1 through 90, above.

92.   The statute is unconstitutionally vague because it fails to adequately define with sufficient clarity what conduct is permissible as opposed to prohibited, such that ordinary citizens are able to conform their conduct accordingly and/or because it authorizes and even encourages arbitrary and discriminatory enforcement.

93.   The statute also violates the requirement that a legislature establish minimal guidelines to govern law enforcement. Because the law vests absolute discretion to police

officers and any authorized person to issue a citation for hunter harassment and to prosecute said offense, the statute fails to meet constitutional standards for definitiveness and clarity

94.   The statute punishes a substantial amount of free speech judged in relation to the statute's legitimate sweep. The statute does not have a valid limiting construction or partial invalidation that narrows it so as to remove this threat or deterrence to constitutionally protected expression.

95.   In their individual capacities, none of the individual police defendants herein may avail themselves of the defense of qualified immunity, because the law, clearly established at the time pertinent herein, was and remains such that the acts and omissions alleged herein were in no way objectively reasonable. These law enforcement officers are presumed to know the clearly established constitutional rights of citizens.

96.   The illegal conduct shown herein exhibits an obvious lack of appropriate training or supervision within the defendant Pennsylvania State Police and Game Commission. The defendant State Police officers and Game Warden herein exemplified by their conduct a flagrant manifestation of this inadequate training and supervision, showing not only their individual intent to treat the plaintiff illegally, but also differently than the state-licensed hunters who were committing illegal acts of trespass, unrostered hunting, terroristic threatening, and road-shooting.

97.   By their refusal to investigate, discipline or require retraining of the offending defendant officers, the Defendant Pennsylvania State Police and Game Commission as policymakers turned a blind eye to and thus tacitly or expressly approved the conduct of the police officer defendants. This represented a conscious choice on the part of Commonwealth Agencies to approve such conduct and the expected, accepted policy, which was a moving force behind the constitutional violations shown.

98.    These policies were carried out by the defendant officers. These policies damaged the plaintiff by violating her protected rights, privileges and immunities under the United States Constitution, through 42 U.S.C. 1983, and under the Pennsylvania Constitution as well.

99.    The actions of defendants described herein were done in bad faith, maliciously and with a deliberate indifference to the plaintiff's protected rights, and with a callous disregard for the same. Awards of punitive damages against the individual defendants are thus warranted.

100.    The acts and conduct of the individual defendants also represent liability under state tort law, constituting negligence, gross negligence, and defamations per se.

101.    The defendants' actions, done with malice were especially extreme and outrageous, and the emotional distress suffered by the plaintiff was extreme. The defendants knew or should have known that such emotional distress would result from their conduct, and that there was an especial likelihood that genuine and serious emotional distress would arise from these special circumstances. Under state law, such conduct comprises the intentional or negligent infliction of emotional distress upon the plaintiff.

102.    The actions on the part of the defendant police officers represent an illegal prior restraint on plaintiff's free speech and rights to travel under both federal and state constitutions. Plaintiff intends to file a complaint with the police concerning illegal conduct of hunters whenever she witnesses such conduct in the future; she now faces the reasonable belief that she will face illegal restraints on her protected rights, with an equally reasonable expectation of facing similar arrests and prosecutions. She has no adequate remedy at law, and therefore seeks injunctive relief against the Pennsylvania State Police and the Game Commission, and their employees, prohibiting such illegal conduct in the future

103.  Additionally, because erroneous information was published in the press regarding the numerous criminal charges brought by the police against the plaintiff, plaintiff's good name and reputation was slandered to the general public. Plaintiff has valued her good name in her community. Not only has the action of the defendants damaged the plaintiff's reputation, but her reputation and good name in the community will have been irreparably damaged unless this Court orders the defendants Pennsylvania State Police and Game Commission to apologize to plaintiff for the conduct of the state police and game warden in this case, together with a statement of the plaintiff's innocence regarding the criminal charges, for release to the media.

104.  The Pennsylvania State Police and Game Commission on their own should issue an apology to the Plaintiff for the conduct of the Commonwealth's employees in this case, together with a statement of the plaintiff's innocence regarding the criminal charges.

## FIRST CAUSE OF ACTION

Defendants' application of 34 Pa.C.S.A § 2302 (A.1)(2) and (7) and 18 Pa.C.S.A. 2709 (A)(2) and (A)(3) to arrest and prosecute Plaintiff for engaging in constitutionally-protected speech violated the First Amendment to the United States Constitution as it applies to the states through the Fourteenth Amendment to the United States Constitution, and Plaintiff was injured thereby. At all times relevant, the Commonwealth and individual Defendants acted under color of state law, and are not entitled to qualified immunity.

## SECOND CAUSE OF ACTION

Defendants' arrest of Plaintiff without probable cause violated her Fourth Amendment right to be free from unreasonable searches and seizures, as that right is applied to the states by the Fourteenth Amendment to the United States Constitution, and Plaintiff was injured thereby.

At all times relevant, the Commonwealth and individual Defendants acted under color of state law, and are not entitled to qualified immunity.

## THIRD CAUSE OF ACTION

Defendants' prosecution of Plaintiff without appropriate legal foundation violated her Fourth Amendment right to be free from malicious prosecution, as that right is applied to the states by the Fourteenth Amendment to the United States Constitution, and Plaintiff was injured thereby. At all times relevant, the Commonwealth and individual Defendants acted under color of state law, and are not entitled to qualified immunity.

## FOURTH CAUSE OF ACTION—STATE LAW CLAIMS

As a direct and proximate result of the actions of all defendants, Plaintiff suffered and continues to suffer mental anguish and emotional distress, some or all of which may be permanent, as well as property losses and damage to her reputation.

The acts and conduct of Defendant State Police Officers and Game Warden constitute false arrest, intentional infliction of emotional distress, trespass, interference with state constitutional rights, negligence, gross negligence, and negligent hiring, training, retention and supervision under the laws of the Commonwealth of Pennsylvania, and this Court has supplemental jurisdiction to hear and adjudicate these claims.

The acts and conduct of all the individual defendants alleged above constitute intentional infliction of emotional distress, trespass, and interference with state constitutional rights, on the grounds that they acted in concert with the State Police and Game Warden to deprive the plaintiff of her rights.

At all times relevant, the Commonwealth and individual Defendants acted under color of state law, and are not entitled to qualified immunity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Janice Haagensen requests that this Honorable Court grant the

following relief:

- A judgment declaring that the Hunter Harassment statute, 34 Pa.C.S.A § 2302 violates the Constitution and laws of the United States and the Constitution and laws of the State of Pennsylvania on its face;

- A judgment declaring that 34 Pa.C.S.A. § 2302 violates the Constitution and laws of the United States and laws of the State of Pennsylvania as applied to Plaintiff;

- A judgment declaring that 18 Pa.C.S.A. § 2709, though not unconstitutional on its face, is unconstitutional as applied to Defendant, as it attempts to regulate and criminalize protected speech in violation of the First Amendment to the United States Constitution and Article I, § 7 of the Pennsylvania Constitution.

- A judgment declaring that the defendants, individually and/or in conspiracy, violated the statutory and constitutional provisions, both state and federal, shown herein;

- A preliminary and permanent injunction enjoining defendants (and their divisions, officers, servants, employees, attorneys, agents and representatives, successors-in-office and all persons acting or purporting to act in concert or cooperation with defendants or pursuant to defendants' authority) from continuing to enforce 34 Pa.C.S.A. 2302, as presently enacted;

- That the Court order that all criminal records of any kind, including fingerprints relating to the subject criminal charges, be immediately expunged; that a designated representative of the Commonwealth be ordered to follow the expungement process, and that such person report in writing to this Court, with written notice to Counsel, that a) the expungement has actually been accomplished, and b0 all records, whether computerized or otherwise, which were made available or obtained by any law enforcement agency have actually been destroyed;

- If expungement is not carried out, that the Court assess additional damages against the Commonwealth defendants;.

For reasons stated in this Complaint, an actual and immediate controversy has arisen and

now exists between Plaintiff and Defendants, which parties have genuine and opposing interests

and which interests are direct and substantial. The statute fails to comply with provisions of the

United States and Pennsylvania Constitutions for the reasons set forth in this Complaint. Plaintiff

is thus entitled to a declaratory judgment as well as such other and further relief as may follow from the entry of such a declaratory judgment.

Plaintiff has no adequate remedy at law. Unless enjoined by the Court, police officers and other authorized persons will continue to infringe the Plaintiff's and the public's constitutionally protected rights and thereby cause irreparable injury. This threat of injury to Plaintiff and the public from continuing violations requires permanent injunctive relief.

Plaintiff further requests that this Honorable Court grant the following relief:

- Enter a declaratory judgment that the Commonwealth of Pennsylvania has a custom, practice and/or policy of applying 34 Pa.C.S.A. § 2302 (A.1)(2) and (7) in an unconstitutional manner to retaliate against, and chill, citizens' First Amendment speech rights;

- Enter an award for compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial;

- Enter an award for punitive damages against the individual defendants;

- Enter an award for all costs of this action, expenses and counsel fees pursuant to 42 U.S.C. § 1988, and interest thereon, and that plaintiff be awarded interest on all monetary relief, including damages, costs, fees and expenses, from the date of judicial demand until paid; and

- Enter such relief as this Honorable Court may deem just and deserving.

Plaintiff demands a jury trial.

Respectfully submitted,

Date: May 27, 2008, Tuesday

s/ Janice Haagensen
Janice Haagensen
PA 49982
Plaintiff *pro se*

349 New Road
Enon Valley, PA 16120
Tel: 724 336-5962
E-mail: janhaagensen@aol.com