IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANICE S. HAAGENSEN,       )
          Plaintiff,      )
                        )
       vs                 )       Civil Action No. 08-727
                        )       Judge Ambrose
PENNSYLVANIA STATE POLICE, et al., )       Magistrate Judge Mitchell
          Defendants.   )

REPORT AND RECOMMENDATION

I.     Recommendation

It is respectfully recommended that the motion for summary judgment submitted on behalf of Defendants Pennsylvania State Police, Clyde Jones, Todd Scott, Christian Winter and the Pennsylvania Game Commission on the constitutionality issue of Plaintiff's complaint (Docket No. 75) be granted.  It is further recommended that the motion for summary judgment submitted on behalf of Plaintiff to declare 34 Pa. C.S. § 2302 unconstitutional (Docket No. 78) be denied.  Thus, the only claims that would remain for disposition are those alleging First Amendment retaliation, violation of due process and equal protection, as to which motions for summary judgment are due by October 30, 2009, with Plaintiff's responses thereto due by November 15, 2009.

II.     Report

Plaintiff, Janice S. Haagensen, proceeding pro se,[1] brings this action pursuant to 42 U.S.C. § 1983 against Defendants, the Pennsylvania State Police, three State Police Troopers

---

[1] Although she is proceeding pro se in this matter, Plaintiff is in fact an attorney and has filed several cases before this Court on behalf of clients, in addition to the two cases she filed in which she is also the plaintiff.  See Grine v. Coombs, No. 95-342E; Stacey v. City of Hermitage, No. 02-1911; Ferguson v. Haney, No. 98-1223.

(Christian Winter, Clyde Jones and Todd Scott), the Pennsylvania Game Commission, Game Warden Jeffrey Kendall and eleven individuals (Michael McBride, Nathaniel Akins, Leslie McBride, Gary Ferrigno, Cathy Vasko a/k/a Cathy Ferrigno a/k/a Cathy Leary, George Stevenish, Ben Sherry, Jordan Snyder, Ralph Joy, Jr., Shane Sparks and Jay McBride).  Plaintiff alleges that she was subjected to false arrest and malicious prosecution in violation of her Fourth Amendment rights when the eleven individuals (hunters who were on or near her property) acted in concert with the state troopers to have her charged and prosecuted for allegedly violating Pennsylvania's Hunter Harassment Statute, 34 Pa. C.S. § 2302 ("the HHS"), and the criminal harassment statute, 18 Pa. C.S. § 2709.  She challenges the constitutionality of both acts, the HHS on its face and as applied to her and § 2709 as applied to her, as violative of her rights under the First and Fourteenth Amendments, and she alleges that the Defendants retaliated against her for exercising her freedom of speech and violated her rights to due process and equal protection of the laws.  She also raises state constitutional and common law claims.

Various motions to dismiss were filed on behalf of numerous defendants.  After a Report and Recommendation and Supplemental Report and Recommendation were filed and adopted as the opinions of the Court, the following claims remain in the case: in Count I, the constitutional challenges to the HHS and § 2709 (against the State Police and the Game Commission), and the claims of First Amendment retaliation, violation of due process and equal protection (against all defendants except Game Warden Kendall, who was dismissed from the case); in Count IV, the constitutional challenges to the HHS (against the State Police and the Game Commission).  At a status conference on June 11, 2009, the case was bifurcated, as follows: Plaintiff and the Commonwealth Defendants (namely, the State Police, Troopers Winter, Jones and Scott and the

Game Commission) were scheduled to file cross-motions for summary judgment on the constitutional challenges and Plaintiff and all defendants were scheduled to proceed to mediation on the non-constitutional issues.  At a subsequent status conference on October 2, 2009, the Commonwealth Defendants reported that the mediation on the non-constitutional issues had been unsuccessful and they requested leave to brief these issues as well.  This Report and Recommendation addresses only the cross-motions on the constitutional challenges.  For the reasons that follow, the Commonwealth Defendants' motion for summary judgment should be granted and Plaintiff's motion should be denied.

Facts

In December of 2001, within the span of one week, Plaintiff was given five citations for violating two subsections of the HHS, namely §§ 2302(a.1)(2) and (7).  She pled not guilty, but she was convicted of all five offenses before a district justice[2] on April 9, 2002.  She filed appeals to the Court of Common Pleas of Lawrence County from these summary convictions and de novo hearings were held on July 28, 2004, August 6, 2004 and October 8, 2004.

Prior to the de novo hearings, Plaintiff filed two motions to dismiss the citations on the ground that §§ 2302(a.1)(2) and (7) were unconstitutional, both on their face and as applied to her.  On February 27, 2004, Judge J. Craig Cox issued an order on Plaintiff's motions to dismiss. (Comm. Defs.' Ex. B.)[3]  In her motions, Plaintiff argued that the use of the word "harasses" rendered the HHS unconstitutionally vague and overbroad.  (Id. ¶ 2.)

The court noted that Plaintiff argued that the state of Connecticut had a similar statute

_____

[2]Effective January 29, 2005, district justices were renamed magisterial district judges.

[3]Docket No. 76.

3

that was declared unconstitutional in the case of <u>Dorman v. Satti</u>, 862 F.2d 432 (2d Cir. 1988). However, the court observed that, since that time, the state had revised its statute to be nearly identical to the Pennsylvania statute and the Connecticut Supreme Court has held that the revised statute, Conn. Gen. Stat. § 53a-183a(b)(2), is constitutional.  <u>State of Connecticut v. Ball</u>, 796 A.2d 542 (Conn. 2002) ("<u>Ball II</u>").[4]  (<u>Id.</u> ¶¶ 5-6.)

The court then held that, in interpreting the term "harasses" in the HHS, courts should look to the term's usage in 18 Pa. C.S. § 2709(a), the criminal harassment statute.  (<u>Id.</u> ¶ 7.) The court noted that 18 Pa. C.S. § 2709(a) "specifically defines and limits the offense of harassment in a manner to protect free speech."  In light of this, the court concluded that the HHS was not unconstitutional on its face and denied that motion to dismiss.  (<u>Id.</u> ¶¶ 8-9.)  The court reserved ruling on the unconstitutional application motion until the specific facts could be developed at hearings.  (<u>Id.</u> ¶ 10.)

On March 18, 2005, Plaintiff was convicted by the Honorable Dominick Motto, President Judge of the Court of Common Pleas of Lawrence County, of all five counts of violating §§ 2302(a.1)(2) and (7) of the HHS.  According to the Commonwealth Court's opinion issued on her appeal, the trial court held that these sections were constitutional on their face and as applied to the facts of her case and that the Commonwealth had submitted sufficient evidence to convict her of each of the alleged offenses by proving that she did in fact harass the victims and interfere

---

[4]In <u>State of Connecticut v. Ball</u>, 627 A.2d 892 (Conn. 1993) ("<u>Ball I</u>"), the Connecticut Supreme Court held that the statute was content-neutral.  However, the court concluded that the record was not sufficiently developed to determine whether the properties at issue were public or nonpublic fora or to determine the nature and seriousness of the state interests that purported to justify the regulation.  Therefore, it remanded the case to the trial court for an evidentiary hearing on these issues.  The subsequent appeal, in which the court found the statute constitutional, is <u>Ball II</u>.

with their hunt.  She was sentenced to pay the costs of prosecution and fines ranging from $50.00 to $500.00.  She then appealed her convictions to the Pennsylvania Commonwealth Court.

By opinion dated June 2, 2006, the Commonwealth Court reversed the convictions.  The court held that the Commonwealth had failed to adduce sufficient evidence that Plaintiff acted with the specific intent to violate the HHS.  Specifically, the court stated that:

> Haagensen testified that she felt she had a right to protest the actions of the "victims" here because, in the cases of the McBrides and Stevenish, she believed that the hunters were unlawfully trespassing on her property, and, in Ferrigno's case, she believed that Kathy Ferrigno was illegally hunting too close to a public road.  The trial court completely disregarded this testimony and, in fact, did not mention it at all in its five extremely brief opinions.  In doing so, the trial court impliedly believed the version of events offered by the Commonwealth's witnesses.  However, even accepting the testimony of the Commonwealth witnesses, there is nothing in that testimony to refute Haagensen's position regarding the motivation for her actions.

> To the contrary, Michael McBride, Lester McBride, Aikens, Trooper Winter and Trooper Scott each testified that Haagensen's agitation and complaints all related to hunters trespassing on her property.  Lester McBride even acknowledged that hunters were, in fact, trespassing on Haagensen's property during the December 8, 2001, incident, and he conceded that when Haagensen reacted, she had no way of knowing that those hunters were not a part of McBride's group.  In the case of the Ferrignos, Gary Ferrigno testified that Haagensen's shouts were in the nature of reprimands about hunting too close to the public road, and Trooper Jones also acknowledged such a complaint.  In addition, the record establishes that it was Haagensen, not the "victims," who called the authorities in these cases.  This evidence supports the conclusion that Haagensen believed, either rightly or wrongly, that the "victims" here were engaging in the *unlawful* taking of wildlife, and Haagensen merely sought to warn the hunters not to trespass on her property or hunt illegally near her farm.  See Commonwealth v. Wheaton, 409 Pa. Super. 622, 598 A.2d 1017 (1991) (holding that, by complaining and threatening to sue, the defendant's intent was not to harass but to serve a legitimate purpose, where he believed that the water association improperly intended to shut off his water).

> Because the Commonwealth's evidence fails to support a finding that Haagensen acted with the intent to interfere with the lawful taking of wildlife, the trial court erred in concluding that the Commonwealth sustained its burden of proof.  Accordingly, we reverse the trial court to the extent it found that

Haagensen violated sections 2302(a.1)(2) and (7) of the Hunter Harassment
Statute.

Commonwealth v. Haagensen, 900 A.2d 468, 475 (Pa. Commw. 2006) (footnotes omitted).[5]  The

court did not reach the constitutional issues raised because "when a case raises both

constitutional and non-constitutional issues, a court should not address the constitutional issues if

the case can properly be decided on non-constitutional grounds."  Id. at 469 n.2 (citation

omitted).

In addition to the HHS charges, Plaintiff was charged with three instances of violating the

criminal harassment statute, 18 Pa. C.S. § 2709.   On April 29, 2002, a district justice dismissed

one charge of harassment, under § 2709(a)(3), that had been filed against her on December 13,

2001.  (Commw. Defs.' Ex. H.)  However, on that same date, the district justice found her guilty

of two other charges of harassment, one under § 2709(a)(2) and one under § 2709(a)(3).  She

appealed to the Court of Common Pleas of Lawrence County.  On May 6, 2004, Judge Motto

found her not guilty on her appeal at No. 606 of 2002 after a summary non-jury trial.  (Commw.

Defs.' Ex. F.)  On March 18, 2005, Judge Motto found her not guilty on her appeal at No. 607 of

2002 after a summary non-jury trial.  (Commw. Defs.' Ex. G.)

Procedural History

Plaintiff filed this action on May 27, 2008.  Count I alleges that the HHS is

unconstitutional on its face and as applied to her and that § 2709 is unconstitutional as applied to

her because they infringe on her First Amendment rights of free speech and free association as

---

[5]The Commonwealth Court opinion identifies as "Kathy Ferrigno" the individual named
herein as "Cathy Ferrigno."  In addition, it would appear that the "Lester McBride" identified in
the Commonwealth Court opinion is the same individual as "Leslie McBride" named herein.

well as her Fourteenth Amendment rights of due process and equal protection.  In addition,

Count I contains a claim that she was subjected to a retaliatory prosecution.  It is brought

pursuant to § 1983.  Count II alleges that Plaintiff was falsely arrested in violation of her rights

under the Fourth Amendment, and Count III alleges that she was subjected to a malicious

prosecution, also in violation of her rights under the Fourth Amendment; they are also brought

pursuant to § 1983.  Finally, Count IV alleges that Defendants' actions violated Plaintiff's rights

under the Pennsylvania constitution (Article I, §§ 1, 7 and 27) and further alleges state law claims

of false arrest, intentional infliction of emotional distress, trespass, negligence, gross negligence,

and negligent hiring, training, retention and supervision.

     As noted above, various motions to dismiss were filed on behalf of numerous defendants.

After a Report and Recommendation and Supplemental Report and Recommendation were filed

and after the Supplemental Report and Recommendation was adopted as the opinion of the

Court, many of the claims were dismissed.  The following claims remain in the case: in Count I,

the constitutional challenges to the HHS and § 2709 (against the State Police and the Game

Commission), and the claims of First Amendment retaliation, violation of due process and equal

protection (against all defendants except Game Warden Kendall); in Count IV, the constitutional

challenges to the HHS (against the State Police and the Game Commission).[6]  On September 10,

2009, Plaintiff and the Commonwealth Defendants filed cross-motions for summary judgment on

the constitutional challenges.

     The Commonwealth Defendants contend that: 1) the HHS is not unconstitutionally

_____

    [6]Defendant Cathy Vasko a/k/a Cathy Ferrigno a/k/a Cathy Leary has filed a notice of
bankruptcy.  Remaining defendants Nathaniel Akins and Ben Sherry had answers due on October
9, 2008 but have not made an appearance in this case.

overbroad on its face; 2) Plaintiff does not have standing to bring a facial vagueness challenge to the HHS and even if such a claim existed it would have no merit here; 3) the Commonwealth Defendants have Eleventh Amendment immunity as to Plaintiff's claim for injunctive relief under the Pennsylvania constitution and for Plaintiff's as-applied challenges to the relevant statutes because she has not demonstrated an ongoing violation; 4) Plaintiff's as-applied challenges to § 2709 are barred by the statute of limitations; and 5) the Commonwealth Defendants are entitled to summary judgment as to Plaintiff's "as-applied" challenge to the HHS because the Commonwealth Court held that the statute did not in fact apply to her actions.

Plaintiff argues that: 1) the HHS is unconstitutionally overbroad because it criminalizes protected speech; 2) the HHS is unconstitutionally vague because its repeated and inconsistent use of undefined terms requires individuals of common intelligence to guess at is meaning and scope; and 3) the challenges to § 2709 are not time barred.[7]

Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial

_____

[7]Plaintiff does not address the Eleventh Amendment immunity argument or the Commonwealth Defendants' final argument.

burden of identifying evidence which demonstrates the absence of a genuine issue of material

fact.  Once that burden has been met, the non-moving party must set forth "specific facts showing

that there is a genuine issue for trial" or the factual record will be taken as presented by the

moving party and judgment will be entered as a matter of law.  <u>Matsushita Elec. Indus. Corp. v.</u>

<u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  An issue is genuine only if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty-</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

<u>Facial Challenges to the HHS</u>

Plaintiff brings facial challenges to the HHS as overbroad and vague.  The statute

provides that:

> Except as otherwise provided in this title, it is unlawful for another person at the
> location where the activity is taking place to intentionally obstruct or interfere
> with the lawful taking of wildlife or other activities permitted by this title.

34 Pa. C.S. § 2302(a).  The statute lists the following activities that constitute violations:

> Activities which violate section.--A person violates this section when he
> intentionally or knowingly:
>
>> (1) drives or disturbs wildlife for the purpose of disrupting the lawful
>> taking of wildlife where another person is engaged in the process of
>> lawfully taking wildlife or other permitted activities;
>>
>> (2) blocks, impedes or otherwise harasses another person who is engaged
>> in the process of lawfully taking wildlife or other permitted activities;
>>
>> (3) uses natural or artificial visual, aural, olfactory or physical stimuli to
>> affect wildlife behavior in order to hinder or prevent the lawful taking of
>> wildlife or other permitted activities;
>>
>> (4) creates or erects barriers with the intent to deny ingress or egress to
>> areas where the lawful taking of wildlife or other permitted activities may
>> occur;

9

(5) interjects himself into the line of fire;

(6) affects the condition or placement of personal or public property intended for use in the lawful taking of wildlife or other permitted activities in order to impair its usefulness or prevent its use;

(7) enters or remains upon public lands or upon private lands without permission of the owner or their agent, with intent to violate this section; or

(8) fails to obey the order of any officer whose duty it is to enforce any of the laws of this Commonwealth where such officer observes any conduct which violates this section or has reasonable grounds to believe that any person intends to engage in such conduct.

§ 2302(a.1).  Plaintiff was convicted of violating subsections (2) and (7).

The Commonwealth Defendants argue that the statute's specific intent requirement and list of particular conduct that violates the act demonstrate that it survives Plaintiff's constitutional challenges.  Plaintiff responds that the HHS is overbroad because it reaches a substantial amount of constitutionally protected speech and that it is vague because it does not define the term "harass."

The Supreme Court recently held that:

Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of "premature interpretation of statutes on the basis of factually barebones records." Sabri v. United States, 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004) (internal quotation marks and brackets omitted). Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither " 'anticipate a question of constitutional law in advance of the necessity of deciding it' " nor " 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' " Ashwander v. TVA, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (quoting Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885)). Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that " '[a] ruling of unconstitutionality

10

frustrates the intent of the elected representatives of the people.' " <u>Ayotte v.</u>
<u>Planned Parenthood of Northern New Eng.</u>, 546 U.S. 320, 329, 126 S.Ct. 961, 163
L.Ed.2d 812 (2006) (quoting <u>Regan v. Time, Inc.</u>, 468 U.S. 641, 652, 104 S.Ct.
3262, 82 L.Ed.2d 487 (1984) (plurality opinion)).

<u>Washington State Grange v. Washington State Republican Party</u>, 128 S.Ct. 1184, 1191 (2008).

> <u>Overbreadth Challenge</u>

The Supreme Court has stated that:

> According to our First Amendment overbreadth doctrine, a statute is
> facially invalid if it prohibits a substantial amount of protected speech.  The
> doctrine seeks to strike a balance between competing social costs.  <u>Virginia v.</u>
> <u>Hicks</u>, 539 U.S. 113, 119-120, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003).  On the
> one hand, the threat of enforcement of an overbroad law deters people from
> engaging in constitutionally protected speech, inhibiting the free exchange of
> ideas.  On the other hand, invalidating a law that in some of its applications is
> perfectly constitutional-particularly a law directed at conduct so antisocial that it
> has been made criminal-has obvious harmful effects.  In order to maintain an
> appropriate balance, we have vigorously enforced the requirement that a statute's
> overbreadth be substantial, not only in an absolute sense, but also relative to the
> statute's plainly legitimate sweep.  <u>See Board of Trustees of State Univ. of N.Y. v.</u>
> <u>Fox</u>, 492 U.S. 469, 485, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989); <u>Broadrick v.</u>
> <u>Oklahoma</u>, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

<u>United States v. Williams</u>, 128 S.Ct. 1830, 1838 (2008).  The Court has cautioned that the

doctrine "is, manifestly, strong medicine" and should be used "sparingly and only as a last resort"

and that a court should invoke a "limiting construction" or employ "partial invalidation" before

resorting to finding a law facially overbroad.  <u>Broadrick</u>, 413 U.S. at 613.

Accordingly, the proper inquiry when considering an overbreadth challenge is whether a

statute or policy "prohibits a substantial amount of protected expression."  <u>Ashcroft v. Free</u>

<u>Speech Coalition</u>, 535 U.S. 234, 244 (2002).  The Court of Appeals has stated that to determine

how broadly a statute sweeps, courts should looks to four factors: 1) "the number of valid

applications," 2) "the historic or likely frequency of conceivably impermissible applications," 3)

"the nature of the activity or conduct sought to be regulated," and 4) "the nature of the state interest underlying the regulation."  <u>Gibson v. Mayor & Council of Wilmington</u>, 355 F.3d 215, 226 (3d Cir. 2004) (internal quotation marks and citations omitted).

The Commonwealth Defendants contend that, as to the first factor, the HHS has numerous valid applications, and the sweep of those valid applications is much broader than the scope of any conceivably impermissible applications.  They note that the HHS contains eight subsections, each identifying a type of conduct that violates the statute, and that Plaintiff only challenges the facial validity of subsections (2) and (7).  Furthermore, the Complaint makes clear that Plaintiff only challenges these sections insofar as they involve the term "harasses," which she alleges is overbroad as it potentially encompasses protected speech.  Thus, they contend, Plaintiff must concede that most of the applications of the HHS are permissible under the Constitution, and the only potential applications that she believes may be problematic are those where allegedly protected speech could be viewed as harassing.  Although Plaintiff has not conceded this point, she has not proffered any cogent argument to refute it.

The Commonwealth Defendants note that, based merely upon the statutory language, a short list of the broad categories of activity where application of the HHS would be perfectly valid includes: 1) disturbing wildlife for the specific purpose of interfering with lawful hunting, § 2302(a.1)(1); 2) blocking or impeding a hunter with the specific intent of interfering with lawful hunting, § 2302(a.1)(2); 3) using fighting words in a harassing manner with the purpose of interfering with lawful hunting, § 2302(a.1)(2); 4) harassing a hunter through action, not speech, in such a way so as to intentionally interfere with lawful hunting, § 2302(a.1)(2); 5) using any non-protected speech in a harassing manner with the purpose of interfering with lawful hunting,

§ 2302(a.1)(2); 6) using natural or artificial stimuli to affect wildlife behavior with the specific intent of interfering with lawful hunting, § 2302(a.1)(3); 7) erecting a barrier with the intent of interfering with lawful hunting, § 2302(a.1)(4); and 8) standing in the line of fire with the intent of interfering with lawful hunting, § 2302(a.1)(5).  The Commonwealth Defendants note that none of these applications raise constitutional concerns and thus, the statute is perfectly valid in most, if not all, of its intended applications.  Plaintiff has not responded to this point.

As to the third factor, the Commonwealth Defendants contend that the activity and/or conduct regulated by the HHS is that which is knowingly and intentionally designed to interfere with the legal activity of lawful hunting.  The vast majority of the activity and/or conduct regulated by the HHS is completely unrelated to speech, let alone constitutionally protected speech.  They contend that the statute only touches upon speech to the extent that the speech is specifically intended to harass another person who is engaged in the process of lawful hunting, and then only if it is designed to interfere with that hunting.  See 34 Pa. C.S. § 2302(a) and (a.1)(2).  They argue that, to the extent the HHS does potentially apply to speech, it does not do so in a manner that targets speech based on its content.  Plaintiff disputes this point, but provides nothing other than her own opinion that the act primarily regulates speech rather than conduct.  Thus, the third factor supports the constitutionality of the HHS.

As to the fourth factor, Richard R. Palmer, Director of the Bureau of Wildlife Protection for the Pennsylvania Game Commission (Palmer Decl. ¶ 1),[8] states that the HHS serves two vital purposes.  First, it helps protect the safety of both hunters and non-hunters during the hunting season.  (Palmer Decl. ¶ 3.)  Second, he states that the HHS facilitates the taking of game, which

---

[8]Docket No. 76 Ex. C.

serves important ecological interests involving the management of wildlife populations in the Commonwealth.  (Id. at ¶ 4.)  Plaintiff "denies" these statements (Docket No. 86 ¶ 14), but she does not cite to any authority in support of this denial and she cannot rely upon her own personal opinion as to whether the statute serves important purposes.

The Commonwealth Defendants contend that the fact that these purposes are important state interests is indicated by several provisions of the Game and Wildlife Code.  Section 2101 of the Game and Wildlife Code provides as follows:

> The commission shall promulgate such regulations as it deems necessary and appropriate concerning game or wildlife and hunting or furtaking in this Commonwealth, including regulations relating to the protection, preservation and management of a game or wildlife and game or wildlife habitat, permitting or prohibiting hunting or furtaking, the ways, manner, methods and means of hunting or furtaking and the health and safety of persons who hunt or take wildlife or may be in the vicinity of persons who hunt or take game or wildlife in this Commonwealth.

34 Pa. C.S. § 2102(a).  In addition, the Game Commission is instructed that it "shall utilize hunting and trapping as methods of effecting necessary management of game, furbearer and wildlife populations."  34 Pa. C.S. § 103(b).  Furthermore, the Commonwealth of Pennsylvania has announced, by statutory mandate, a state interest in protecting the Commonwealth's heritage of recreational hunting.  In the Game and Wildlife Code, the Game Commission is instructed that it shall "[s]erve the interest of sportsmen by preserving and promoting our special heritage of recreational hunting and furtaking by providing adequate opportunity to hunt and trap the wildlife resources of this Commonwealth."  34 Pa. C.S. § 321(c)(13).  Thus, the Commonwealth of Pennsylvania has made clear that it has an interest in protecting the safety of hunters and those in the vicinity of hunters, and also has an interest in facilitating the activity of hunting.

In addition, various courts have recognized that "[h]unting is a legitimate activity which

14

the state may protect in any reasonable and constitutionally permissible manner." <u>Shuger v. State of Indiana</u>, 859 N.E.2d 1226, 1234 (Ind. Ct. App. 2007) (citing <u>Lilburn v. Racicot</u>, 855 F. Supp. 327, 329 (D. Mont. 1991), <u>aff'd mem.</u>, 967 F.2d 587 (9th Cir. 1992)).  <u>See also</u> <u>Ball II</u>, 796 A.2d at 553-54 (concluding that the state's interests in public safety, raising revenue, wildlife management and protection of the right of citizens to hunt are as significant as other interests identified by the United States Supreme Court in various cases).  Therefore, the third and fourth factors support the Commonwealth Defendants' position that the HHS applies to conduct that the Commonwealth has a legitimate interest in regulating.

Finally, the Commonwealth Defendants contend that the second factor, which requires an analysis of "the historic or likely frequency of conceivably impermissible applications," is ultimately dispositive and conclusively demonstrates that the HHS survives a facial overbreadth challenge.  The Commonwealth Defendants submit that the frequency of conceivably impermissible applications of the HHS is minimal or nonexistent.

The HHS has been the subject of very little litigation, and Plaintiff's appeal remains the only reported case on the statute.  However, the Commonwealth Defendants note that this case has provided guidance as to how Pennsylvania courts will interpret the statute.  In its opinion reversing Plaintiff's convictions, the Commonwealth Court held that the HHS does not apply unless an alleged perpetrator had the specific intent to interfere with lawful hunting.  Accordingly, the Commonwealth Court held that the HHS does not apply if the perpetrator believed the "victims" were hunting illegally or unlawfully.  <u>Haagensen</u>, 900 A.2d at 474-75.

In addition, as noted above, on February 27, 2004, the Court of Common Pleas addressed Plaintiff's argument that the use of the word "harasses" rendered the HHS unconstitutionally

vague and overbroad.  The court held that in interpreting the term "harasses" in the HHS, courts should look to the term's usage in 18 Pa. C.S. § 2709(a), the criminal harassment statute. (Commw. Defs.' Ex. B ¶ 7.)  The court noted that 18 Pa. C.S. § 2709(a) "specifically defines and limits the offense of harassment in a manner to protect free speech."  In light of this, the court concluded that the HHS was not unconstitutional on its face.  (Id. ¶¶ 8-9.)[9]  The Commonwealth Defendants contend that there is strong indication that the Pennsylvania courts will utilize the definition of "harasses" in 18 Pa. C.S. § 2709 when interpreting the HHS.

Plaintiff objects to the trial court's act of "reaching" to another title of the Pennsylvania statutes (Title 18, the criminal code) to define the term "harasses," in the HHS, which is part of the Game Code in Title 34.  However, she cites no authority to support her contention that this was an inappropriate approach to help define a term left undefined in the HHS.  Moreover, in the amicus brief filed by the American Civil Liberties Union (ACLU) in connection with her appeal to the Commonwealth Court, the ACLU noted that:

> the trial court may have been applying the statutory construction of "in pari materia," codified in the Statutory Construction Act at 1 Pa. C.S. § 1932 (2005): "(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things; (b) Statutes in pari materia shall be construed together, if possible, as one statute."

(ACLU amicus brief at 9 n.3.)[10]

Plaintiff argues that:

---

[9]Although the Court of Common Pleas ultimately reached the wrong conclusion about whether Plaintiff's actions were sanctionable under the HHS using the definition of harass from § 2709, the opinion is instructive insofar as it demonstrates that Pennsylvania courts have striven to apply the HHS in a manner that is consistent with citizens' First Amendment rights.

[10]Plaintiff, who cites this brief frequently in her own, notes that it is available at: www.aclupa.org/downloads/Haagensonamicusbrief.pdf.

It is only in the case where the meaning of any particular section or clause of a section is questioned or doubtful, that it is proper to look into other statutes *in pari materia* to ascertain such intent.  If the language in the original statute is clear and explicit so as to leave no doubt as to what was such intent, then there is no room for construction.

(Pl.'s Br. at 11.)[11]  However, her contention is that the HHS is vague and unclear and therefore her objection to the trial court's reading the HHS in pari materia with § 2709 is unexplained and bewildering.

As defined in § 2709(a)(3), harassment requires a "course of conduct."  Thus, Pennsylvania courts have held that a single act will not support a conviction under that section.  See Commonwealth v. Battaglia, 725 A.2d 192, 194 (Pa. Super. 1999); Commonwealth v. Zullinger, 676 A.2d 687, 689 n. 2 (Pa. Super. 1996); Commonwealth v. Duncan, 363 A.2d 803, 808 (Pa. Super. 1976) (en banc); Commonwealth v. Schnabel, 344 A.2d 896, 898 (Pa. Super. 1975).

In addition § 2709, requires a finding of specific intent, and specifies that the conduct must be of a non-legitimate nature, i.e., it specifies that it does not apply to constitutionally-protected speech.  Thus, § 2709(a) does not apply if an individual's conduct consists solely of protected speech.  Commonwealth v. Miller, 689 A.2d 238, 242 (Pa. Super. 1997), appeal denied, 695 A.2d 785 (Pa. 1997); see also Zullinger, 676 A.2d at 689; Commonwealth v. Duncan, 363 A.2d 803, 807 (Pa. Super. 1976) (en banc) ("our legislature has sought to prohibit such conduct, including speech, which is not Constitutionally protected and which is intended to alarm or seriously annoy another person.  The purpose of the legislature, undoubtedly, was to extend to the Individual the protections which have long been afforded the

---

[11]Docket No. 79.

general public under disorderly conduct and breach of the peace statutes.  The legislature has

sought to prevent, not the initial impact of unwelcome intrusions upon privacy, but rather

Repeated assaults on individual privacy interests.")  Therefore, the HHS has been interpreted in a

way that specifically excludes constitutionally-protected speech, and thus it would appear that the

HHS is not overbroad under any circumstances.

Accordingly, if any overbreadth exists in the statute at all, it certainly is not substantial,

and may be cured through case-by-case analysis.  See New York v. Ferber, 458 U.S. 747, 773-74

(1982).  As the Ferber court noted, "the Court's practice when confronted with ordinary criminal

laws that are sought to be applied against protected conduct is not to invalidate the law in toto,

but rather to reverse the particular conviction."  Id. at 773 (citations omitted).  To the extent there

is any tension between the First Amendment and the HHS, that tension must be dealt with on a

case-by-case basis by the court considering the particular charges brought against an alleged

perpetrator.  The possibility of some limited tension between the HHS and the First Amendment

does not justify finding the HHS facially invalid.

Plaintiff cites Dorman v. Satti, 862 F.2d 432 (2d Cir. 1988), the case in which the Court

of Appeals for the Second Circuit found unconstitutional a prior version of Connecticut's hunter

harassment statute.  But she does not address the fact that the statute was subsequently amended,

that the amended statute is nearly identical to Pennsylvania's HHS, and that the Connecticut

Supreme Court has held the amended statute does not violate individuals' First Amendment

rights because the government had a significant interests in public safety, raising revenue,

wildlife management and protection of the right of citizens to hunt; because the act was narrowly

tailored to serve these interests and because the act left open ample alternative means of

communication.  Ball II, 796 A.2d at 553-55.  In other words, Connecticut's handling of its hunter harassment statute supports, rather than undermines, the constitutionality of Pennsylvania's version.

Plaintiff also argues that the HHS is not content-neutral.  However, she provides no support for this contention other than her own opinion.  Moreover, the Connecticut Supreme Court concluded that the state's revised hunter harassment act, although it implicated the First Amendment, was content-neutral because it:

> penalizes intentional or knowing interference with hunting, in one of the specific ways described in the statute, without regard to the content of the communicative conduct that may constitute such interference.  For example, intentional noisemaking for the purpose of harassing a hunter would fall within the statute regardless of whether the noisemaker was motivated by a philosophical commitment to the protection of animal rights, by a determination to protest the hunter's choice of weapon or by a felt need to engage in public prayer.

Ball I, 627 A.2d at 897.  The court rejected the challengers' contention that the possibility that the statute would only be enforced against those who, by their words or conduct, seek to convey a particular message converted the statute into a content-based one, refused to consider legislative history when the statute met constitutional standards on its face and rejected the idea that the statute's proscriptions would fall disproportionally on the shoulders of anti-hunting groups when the record provided no support for this argument.  Id. at 897-98.  See also Binkowski v. State, 731 A.2d 64, 69 (N.J. Super. Ct. App. Div. 1999) (hunter harassment act sought to proscribe conduct in the form of physical interference with the taking of wildlife, and was not content-based).

Finally, the Supreme Court has held that "[i]n evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or

19

enforcement agency has proffered."  Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 n.5 (1982).  See also Conchatta, Inc. v. Miller, 458 F.3d 258, 263-68 (3d Cir. 2006) (the first question is whether a narrowing construction can limit a potentially overbroad statute).  This is case where a limiting construction of the statute is not only possible, but in fact has been given to the statute by each state court that has considered the issue.  Plaintiff contends that the HHS is not susceptible of a limiting construction, but she has not supported this argument, which is belied by the history of this case.  Therefore, this Court should give the HHS the same limiting constructions as given to it by the courts of Pennsylvania, and reject Plaintiff's facial overbreadth challenge to the HHS.

As the Commonwealth Defendants observe, Plaintiff makes no attempt at demonstrating that the HHS is unconstitutional; she simply asserts that it is and assumes that it is so.  For all the reasons cited above, the Commonwealth Defendants are entitled to summary judgment on Plaintiff's claim that the HHS is unconstitutionally overbroad on its face.

Vagueness Challenge

Plaintiff also challenges the HHS as unconstitutionally vague.  The Supreme Court has stated that:

> Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment.  A conviction fails to comport with due process if statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.  Hill v. Colorado, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000); see also Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).  Although ordinarily "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others," we have relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech.  Hoffman Estates v.

20

Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-495, and nn. 6 and 7, 102 S.Ct.
1186, 71 L.Ed.2d 362 (1982); see also Reno v. American Civil Liberties Union,
521 U.S. 844, 870-874, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).  But "perfect
clarity and precise guidance have never been required even of regulations that
restrict expressive activity."  Ward v. Rock Against Racism, 491 U.S. 781, 794,
109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).

Williams, 128 S.Ct. at 1845.

The Commonwealth Defendants argue that Plaintiff lacks standing to bring a facial

vagueness challenge to the HHS.  They contend that a vagueness challenge can only be raised on

an as-applied basis.  See San Filippo v. Gongiovanni, 961 F.2d 1125, 1136 (3d Cir. 1992) ("It is

well established the inquiry is undertaken on a case by case basis.  The statute or standard is

examined as to whether it is vague as applied to the affected party.")

Plaintiff disputes this point and cites a number of cases in which the Supreme Court

undertook a facial void-for-vagueness challenge.  City of Chicago v. Morales, 527 U.S. 41

(1999); Kolender v. Lawson, 461 U.S. 352 (1983); Papachristou v. City of Jacksonville, 405 U.S.

156 (1972); Coates v. City of Cincinnati, 402 U.S. 611 (1971).  The law appears to be unclear on

this point.  However, it is clear that "facial challenges, including challenges based on vagueness,

are disfavored."  United States v. Fullmer, 2009 WL 3273955, at *15 (3d Cir. Oct. 14, 2009).

In any event, the Commonwealth Defendants argue that the HHS would survive a facial

void-for-vagueness challenge because it has a specific intent requirement and lists particular

conduct that violates the act.  Moreover, as Pennsylvania courts have already indicated, the term

"harass" in the HHS will be interpreted consistently with the term's usage in § 2709, which

defines the term and excludes protected conduct.  Therefore, the Commonwealth Defendants

contend that a person of "common intelligence" would not need to guess at the meaning of the

HHS and that it is not unconstitutionally vague.  Plaintiff disagrees, but supplies nothing other

21

than her own opinion that the statute is unconstitutionally vague on its face.  She has failed to demonstrate that the HHS is unconstitutionally vague on its face.  Therefore, with respect to this challenge, the Commonwealth Defendants' motion for summary judgment should be granted.

### As-Applied Challenges

Plaintiff also challenges the HHS as applied to her.  The Commonwealth Defendants contend that they have immunity, pursuant to the Eleventh Amendment, from Plaintiff's as-applied challenges under the First Amendment and Pennsylvania constitutional challenges and argue that she has not demonstrated an ongoing violation.

### Eleventh Amendment Immunity

The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any
> suit in law or equity, commenced or prosecuted against one of the United States
> by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  The Supreme Court has stated that the presupposition confirmed by the Eleventh Amendment is that "federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (internal citation omitted).  The immunity applies not only to the state itself, but also to state agents and state instrumentalities.  Thus, courts must examine the essential nature and effect of the proceeding, the nature of the entity created by state law or the issue of whether a money judgment against the instrumentality would be enforceable against the state to determine whether the instrumentality should be treated "as an arm of the state."  Regents of the University of Calif. v. Doe, 519 U.S. 425, 429-30 (1997).

22

The State Police and Game Commission are arms of the state for Eleventh Amendment immunity purposes.  See Kelley v. Department of Conservation & Natural Resources, 2005 WL 2465865, at *2 (M.D. Pa. Oct. 6, 2005) (Game Commission); Altieri v. Pennsylvania State Police, 2000 WL 427272, at *5 (E.D. Pa. Apr. 20, 2000) (State Police).  In addition, Defendants Winter, Jones and Scott, in their official capacities, are state agents who would be entitled to Eleventh Amendment immunity.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).

The Court of Appeals for the Third Circuit has indicated that:

> Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law.  The third exception ... is the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.714 (1908).

Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted).  Pennsylvania has not consented to waive its Eleventh Amendment immunity to being sued in federal court.  42 Pa. C.S. § 8521(b); Chittister v. Department of Cmty. & Econ. Dev., 226 F.3d 223, 227 (3d Cir. 2000).  In addition, The Supreme Courts has held that § 1983 does not abrogate states' sovereign immunity.  Quern v. Jordan, 440 U.S. 332, 339-46 (1979).

With respect to the third exception, the Court of Appeals has explained that:

> The theory behind Young is that a suit to halt the enforcement of a state law in conflict with the federal constitution is an action against the individual officer charged with that enforcement and ceases to be an action against the state to which sovereign immunity extends; the officer is stripped of his official or representative character and becomes subject to the consequences of his individual conduct.  The relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages.

MCI Telecommunication Corp. v. Bell Atlantic-Pa., 271 F.3d 491, 506 (3d Cir. 2001) (citations omitted).

"In determining whether the doctrine of <u>Ex parte Young</u> avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." <u>Verizon Md., Inc. v. Public Service Comm'n of Md.</u>, 535 U.S. 635, 645 (2002) (citation omitted).

The Commonwealth Defendants argue that Plaintiff has not presented any evidence of an ongoing violation.  The complaint does not in fact allege an ongoing violation; rather, it contains only Plaintiff's opinion that the statute as written could be applied to her again (and to others) in the manner in which it was applied to her.  However, the only citations she received were in 2001 and she does not even contend that other individuals have been cited since then at all, much less in situations similar to hers.  Therefore, there does not appear to be any ongoing practice for the Court to enjoin.  As the Commonwealth Defendants observe, a matter may be "capable of repetition, yet evading review" (thereby surviving a motion to dismiss on the grounds of mootness), yet still not allege an ongoing violation for purposes of invoking relief under the <u>ex parte Young</u> exception to Eleventh Amendment immunity.  <u>See</u> <u>McCloskey v. Biehler</u>, Civ. A. No. 07-291J, at 4-5 (W.D. Pa. July 27, 2009).[12]

The Commonwealth Defendants also note that the Game Commission has issued a Standard Operating Procedure (SOP) regarding the HHS.[13]  This SOP is designed to ensure that Game Commission employees are enforcing the HHS in a manner consistent its express language

---

[12]Docket No. 76 Ex. E.

[13]Although other law enforcement agencies are also empowered to enforce provisions of the Game and Wildlife Code, including the HHS, the Game Commission is the primary enforcing agency for those provisions.  (Palmer Decl. ¶ 5.)

and with the First Amendment to the United States Constitution.  (Palmer Decl. ¶ 6.)

The SOP, which was issued on July 13, 2009, notes that the 1992 amendments to the HHS were requested by the Game Commission so that the HHS might better withstand constitutional challenges.  (Commw. Defs.' Ex. D.)  In the SOP, Game Commission Officers are informed that under the HHS only specific acts are prohibited, and they are instructed that an indisputable violation of the statute must occur before they issue a citation.  Game Commission Officers are instructed that in most cases an officer should not rely on a single incident, but rather should document a course of repeated, intentional misconduct involving one or more acts of harassment.  Game Commission Officers are also instructed that establishing the specific intent required by the statute generally will require at least one warning that the perpetrator's conduct violates the Game and Wildlife Code.

The SOP also explicitly reminds Game Commission employees that First Amendment rights must be protected.  The SOP also recognizes that there is a right to demonstrate on public property, and delineates some procedures for dealing with such circumstances and for protecting that right.  The SOP instructs that arrests under the HHS should constitute a last resort to deal with clearly unlawful activity, and to preserve safety and order.  (Id. at 2.)

The SOP suggests the following steps in dealing with a case where hunters are being harassed:

> 1. Make sure the person(s) being harassed is/are lawfully hunting, i.e., the season is open and within the lawful start and end times. Check the hunters' hunting licenses, firearms, safety clothing, I.D. and other required equipment.  Where possible, make these checks in the presence of the suspected violator(s).
>
> 2. An officer should accompany the hunter and suspected violator(s) into the field or woods and actually observe unlawful activities or conduct. Actions of the violator(s) must definitely interfere with the hunter's ability to hunt and the hunter

25

is actually engaged in hunting when harassment takes place.

3. Hunter(s) should be encouraged to try several hunting locations. If the violators continue to interfere with the hunter(s) after several relocations, then a clear course of conduct is established.

4. If harassment continues, after several verbal warnings or a written warning has been issued, the violator(s) should be arrested and detained, thereby permitting the hunter(s) to continue hunting unimpaired.

(Id. at 2-3.)

Plaintiff contends that this SOP is advisory, that it is directed only at the Game Commission–not the State Police who issued citations to her–and that it was issued long after the events in question in this case. However, the issue to be decided is whether this Court should enjoin future applications of the HHS based upon the events underlying this case and in considering this issue, the Court may look to subsequent events. After Plaintiff received five citations for violating the HHS in 2001, the following occurred: the Court of Common Pleas limited the reach of the statute by looking to the definition of "harass" in § 2709, the Commonwealth Court further limited the reach of the statute by holding that an individual must have the specific intent to interfere with lawful hunting and the Game Commission issued an SOP that limits the reach of the statute by suggesting a series of procedures that would exempt everyone except those who demonstrate their commitment to violating the conduct proscribed by the statute by doing so repeatedly. Based upon these events, Plaintiff has not explained how anyone engaged in the kind of activity she was engaged in would receive a citation for violating the HHS. Therefore, there is no evidence of an ongoing violation for the Court to enjoin and the Commonwealth Defendants' motion for summary judgment regarding the as-applied challenge to the HHS should be granted.

26

Challenges to § 2709

Plaintiff also raises a constitutional challenge to § 2709 as applied to her.  This statute provides that:

> A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>
> > (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;
> >
> > (2) follows the other person in or about a public place or places;
> >
> > (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose;
> >
> > (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures;
> >
> > (5) communicates repeatedly in an anonymous manner;
> >
> > (6) communicates repeatedly at extremely inconvenient hours; or
> >
> > (7) communicates repeatedly in a manner other than specified in paragraphs (4), (5) and (6).

18 Pa. C.S. § 2709(a).  The Commonwealth Defendants argue that this claim is time barred.

Because Congress did not establish a statute of limitations for civil rights claims, federal courts "borrow" state statutes of limitations governing analogous causes of action.  Wilson v. Garcia, 471 U.S. 262, 276 (1985) (for claims brought under 42 U.S.C. § 1983).  Under Pennsylvania law, the statute of limitations for personal injuries is two years, and that statute is applied to § 1983 claims.  Nelson v. County of Allegheny, 60 F.3d 1010, 1012 (3d Cir. 1995).  Plaintiff's complaint was filed on May 27, 2008.  Thus, only claims accruing on or after May 27, 2006 are timely.

Unlike the selection of the limitations period, the date the cause of action accrues is

27

governed by federal law.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  The Supreme Court has

held that some claims, specifically § 1983 damages claims that necessarily implicate the

constitutionality of the conviction, do not accrue until the conviction has been overturned or

invalidated.  Heck v. Humphrey, 512 U.S. 477, 489-90 (1994).

In this case, the Commonwealth Defendants have submitted documentation to

demonstrate that all of § 2709 charges were resolved in Plaintiff's favor prior to May 27, 2006:

Plaintiff was found not guilty of one charge of harassment on May 6, 2004; she was found not

guilty of another charge on March 18, 2005; and the third referenced charge was dismissed by the

district justice on April 29, 2002.  (Commw. Defs.' Exs. F, G, H.)  Plaintiff contends that she

was found guilty of one charge of violating § 2709 by the Court of Common Pleas and that this

conviction was reversed by the Commonwealth Court.  However, she has submitted only a copy

of the non-traffic summons/citation she received.  (Docket No. 86 ¶ 1 Ex. A.)  This document

does not demonstrate that she was found guilty by the Court of Common Pleas or that the

conviction was reversed by the Commonwealth Court.

The Commonwealth Court opinion makes no mention of § 2709, but discusses only the

HHS convictions.  Plaintiff contends that she was convicted pursuant to § 2709, but the

conviction was reversed pursuant to § 2302(a.1)(2).  (Docket No. 79 at 23.)  This is nonsensical.

Moreover, the Commonwealth Court would not have jurisdiction over appeals regarding

§ 2709 in any event, as this statute is a criminal statute under Title 18, which is not one of the

areas of appeal dedicated to the Commonwealth Court and appeals therefore proceed to the

Superior Court.  See 42 Pa. C.S. § 762(a)(2)(ii) (the Commonwealth Court has exclusive

jurisdiction over appeals from final orders of the courts of common pleas in cases involving

28

regulatory statutes administered by any Commonwealth agency).  See <u>Dickerson v.</u>

<u>Commonwealth</u>, 587 A.2d 379, 381 (Pa. Commw. 1991) (Commonwealth Court had jurisdiction

over appeal of defendant convicted of hunting without a valid license in violation of 34 Pa. C.S.

§ 2711(a)).

Therefore, Plaintiff's as-applied challenges to § 2709 accrued significantly before the

relevant cut-off date for statute of limitations purposes in this case.  Accordingly, the

Commonwealth Defendants are entitled to summary judgment as to these claims because they are

untimely.

For these reasons, it is recommended that the motion for summary judgment submitted on

behalf of Defendants Pennsylvania State Police, Clyde Jones, Todd Scott, Christian Winter and

the Pennsylvania Game Commission on the constitutionality issue of Plaintiff's complaint

(Docket No. 75) be granted.  It is further recommended that the motion for summary judgment

submitted on behalf of Plaintiff to declare 34 Pa. C.S. § 2302 unconstitutional (Docket No. 78)

be denied.  Thus, the only claims that would remain for disposition are those alleging First

Amendment retaliation, violation of due process and equal protection, as to which motions for

summary judgment are due by October 30, 2009, with Plaintiff's responses thereto due by

November 15, 2009.

Within the time specified in the Notice of Electronic Filing, any party may serve and file

written objections to this Report and Recommendation.  Any party opposing the objections shall

have seven (7) days from the date of service of objections to respond thereto.  Failure to file

timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: October 22, 2009